UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM BEREZOWITZ, *et al.*,  )<br>  )<br>  )<br>         Plaintiffs, )<br>  v.                       )<br>  )<br>J&R VENTURES, LLC and JOHN ORECCHIO,  )<br>  )<br>         Defendants. ) | Case No. 08 CV 1756<br><br>Hon. Joan Humphrey Lefkow<br>Magistrate Judge Keys |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT ORECCHIO'S MOTION TO DISMISS**

Plaintiffs by their attorney, James L. Kopecky, P.C., respond as follows to Defendant, John Orecchio's ("Orecchio") motion to dismiss.

**INTRODUCTION**

Plaintiffs' Compliant against Orecchio provides only a glimpse into the widespread fraud which permeated Orecchio's reign over the now defunct AA Capital Partners, Inc. ("AA Capital")—AA Capital is an investment advisory firm in which Orecchio held a 50% ownership stake. Orecchio's fraud began as early as 2004 when he served as the President of AA Capital. Throughout 2004, 2005 and into 2006, Orecchio used AA Capital to conceal his outright theft of tens of millions of dollars of investor proceeds. In 2005 alone, that theft left AA Capital with an operating deficit of over $5 million. Faced with a insurmountable operating deficit, Orecchio formed Supplement Partners as a means of raising funds which he could then use to offset and conceal the operating deficit he created at AA Capital—a classic Ponzi scheme. The connection between AA Capital and Supplement Partners is concrete; Plaintiffs have alleged that Orecchio transferred $1

1

million of their investment proceeds directly to AA Capital on July 26, 2006 to repay an antecedent debt of AA Capital.

In the wake of AA Capital's collapse, the United States Securities and Exchange Commission ("SEC"), among others, sued Orecchio for securities fraud emanating out of his manipulation of AA Capital. Orecchio has not denied the SEC's allegations, but instead has asserted his Fifth Amendment right to remain silent. While Orecchio's assertion of his Fifth Amendment rights cannot be considered for purposes of criminal liability, it creates an inference that the SEC's allegations are true in any civil litigation.

Now, in an effort to further delay any accountability for his actions, Orecchio filed the instant Motion to Dismiss. As set forth below, Plaintiffs' allegations against Orecchio satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, and his Motion to Dismiss should be denied.

**ARGUMENT**

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), the court must construe the complaint in the light most favorable to plaintiffs, taking as true all well-pled factual allegations and making all possible inferences from those allegations in plaintiffs' favor. *Barnes v. Briley,* 420 F.3d 673, 677 (7th Cir. 2005). Dismissal is appropriate only where it appears that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Id.* Here, Plaintiffs have alleged that Orecchio not only made affirmative misrepresentations of material fact, but also that he failed to disclose material facts when he had a duty to do so.

   **I. Plaintiffs' Statutory Securities Claims.**

      A. Orecchio's Omissions of Material Fact.

Plaintiff's allegations that Defendants violated the Securities Exchange Act of 1934, and the state securities acts of Illinois and Delaware fall into two distinct categories: (i) Orecchio failed to disclose material facts, and (ii) Orecchio made affirmative misrepresentations of material fact. Both the omissions of material fact and the affirmative misrepresentations form the foundation of Plaintiff's claims against Defendant Orecchio. Defendant, however, fails to address the allegations concerning material omissions in his Motion to Dismiss. Indeed, nowhere in Defendant's memorandum does he even discuss his failure to disclose the fact that he intended to use Plaintiffs' investment proceeds for something other than the purchase of shares of Xyience. Defendant's Motion to Dismiss should be denied on the sole basis that Defendants have not challenged Plaintiffs' omission allegations.

Further, Defendant's argument that Plaintiffs did not sufficiently plead reliance is without merit—particularly with respect to Plaintiffs' allegations of material omissions. Unlike allegations of affirmative misrepresentations, parties need not offer positive proof of their reliance on material omissions. Rather, reliance is presumed where a duty to disclose material information has been breached. *Affiliated Ute Citizens v. U.S.,* 406 U.S. 128, 154 (1972) (in cases involving a failure to disclose, positive proof of reliance is not a prerequisite to recovery); *see also, Basic Inc. v. Levinson,* 485 U.S. 224, 243 (1988)("Indeed, we previously have dispensed with a requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established."). Thus, in the context of a material omission, a plaintiff

need only demonstrate that defendant had a duty to disclose material information, and defendant failed to disclose the information.

Here, the securities statutes impose a duty upon Defendant to disclose all material facts. The information that Defendant withheld was his intended use of Plaintiffs' investment proceeds. A reasonable and prudent investor would attach tremendous importance to the fact that Defendant used (and intended to use) Plaintiffs' investment proceeds for purposes unrelated to the purchase of Xyience shares. As such, Plaintiffs' reliance on Defendant's material omissions is presumed, and Plaintiffs need not offer positive proof of their reliance. *See Affiliated Ute Citizens,* 406 U.S at 154. In short, Plaintiff has alleged that Defendant Orecchio failed to disclose material facts to Plaintiffs, and Defendant has not attempted to challenge those allegations. Plaintiffs have stated claims under the Securities Exchange Act of 1934, as well as the Illinois and Delaware Securities Acts based on Defendant's failure to disclose material facts, and Defendant's Motion to Dismiss fails as a matter of law.

B. <u>Orecchio's Affirmative Misrepresentations.</u>

Similarly, Plaintiffs have sufficiently alleged that Defendant made affirmative misrepresentations. Plaintiffs detailed the substance and falsity of Orecchio's representations with specificity in their Complaint:

- "Orecchio marketed Supplement Partners as a vehicle he created to invest in and own shares of Xyience Incorporated." (Compl. ¶36.)

- "Orecchio represented that Plaintiffs' investment proceeds would be used to purchase shares in Xyience Incorporated." (Compl. ¶37.)

- "Orecchio presented Plaintiffs with the Limited Partnership Agreement of Supplement Partners, which indicated that J&R Ventures was the general partner. Orecchio further represented that he and Brian O'Keefe were the managers and sole members of J&R Ventures. (Compl. 39.)

4

- "Pursuant to the limited partnership agreement of Supplement Partners, Defendants were obligated to use Plaintiffs' proceeds for the benefit of Supplement Partners and in furtherance of the partnership's investment purpose—to seek a favorable return on investments in Xyience Incorporated." (Compl. ¶42.)

- "Defendants misappropriated Plaintiffs' investment proceeds by issuing a check dated July 26, 2006 for $1 million payable to AA Capital to repay [] an antecedent debt." (Compl. ¶43.)

Those allegations, which must be taken as true, sufficiently set forth Orecchio's affirmative misrepresentations of material fact: that Plaintiffs' investment proceeds would be used to purchase of Xyience shares, when in fact, Orecchio intended to use those proceeds for another purpose.

Moreover, Plaintiffs have alleged that Orecchio's misrepresentations were communicated to each Plaintiff. First, Plaintiffs directly allege that "Orecchio represented that Plaintiffs' investment proceeds would be used to purchase shares in Xyience Incorporated." (Compl. ¶37.) Second, Plaintiffs allege that the misrepresentations were contained in the Supplement Partners partnership agreement, and that Orecchio directly or indirectly provided that partnership agreement to each Plaintiff. (Compl. ¶¶39, 42.) In holding himself out as the managing member of Supplement Partners' general partner and disseminating the Supplement Partners' partnership agreement to Plaintiffs, Orecchio is responsible for the misrepresentations and omissions contained in the partnership agreement. Accordingly, Orecchio is accountable for the material misrepresentations and omissions transmitted to Plaintiffs via the Supplement Partners partnership agreement.

Defendant's challenge to Plaintiffs' reliance allegations is similarly without merit. Plaintiffs' reliance on Orecchio's misrepresentations is alleged in Paragraphs 54, 68, 73 of the Complaint, In those paragraphs, Plaintiffs confirm that they reasonably relied on

Orecchio's misrepresentations and would not have invested in Supplement Partners but for Orecchio's misrepresentations. As a practical matter, Plaintiffs' reliance is also evidenced by the fact that each Plaintiff actually transmitted funds to J&R Ventures based on Defendants' misrepresentations as to the use of those proceeds. Defendant's arguments are meritless in light of the plain and conspicuous allegations contained in the Complaint. Thus, Plaintiffs' allegations that Orecchio affirmatively misrepresented material facts sufficiently pled.

### C.  Orecchio Is Also Liable as a Control Person of J&R Ventures.

While Plaintiffs have sufficiently articulated Orecchio's affirmative misrepresentations and material omissions, Plaintiffs' Complaint would withstand scrutiny even if Orecchio never communicated with Plaintiffs because Orecchio is a control person of J&R Ventures.

Section 20(a) of the Securities Exchange Act of 1934 provides:

> *Every person who, directly or indirectly, controls any person liable under any provision of this title* or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C.A. §78t(a)(emphasis added). Section 20 of the 1934 Act has been broadly interpreted to impose liability on controlling persons who had the power or ability—even if not exercised—to control the specific transaction or activity that is alleged to give rise to liability. *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873 (7th Cir. 1992). The Illinois and Delaware securities acts have similar controlling person provisions.[1] The

---

[1] The Illinois Securities Act's definition of "controlling person" is even broader than Section 20(a) of the Securities Exchange Act of 1934 in that the Illinois statute includes "persons acting in concert in the offer and sale of a security . . . owning beneficially . . . either (i) 25% or more of

6

Seventh Circuit has set forth a two-pronged test for determining controlling person liability under the federal statutes.  First, the controlling person needs to have actually exercised general control over the operations of the wrongdoer, and second, the control person must have had the power or ability—even if not exercised—to control the specific transaction or activity that is alleged to give rise to liability.  *Donohoe v. Consol. Operating & Prod. Corp.,* 30 F.3d 907, 911-912 (7th Cir. 1994).  Thus, for purposes of the securities statutes, Plaintiffs need not establish that Defendant Orecchio made the misrepresentation himself; rather, Plaintiffs need only plead facts that if proven, would establish that Orecchio is a controlling person of J&R Ventures (*i.e.,* that he exercised control over J&R Ventures' operations and had the power or ability to control the transactions that form the basis of Plaintiffs' claims).  Determination of whether an individual defendant is a "controlling person" under Section 20(a) of the 1934 Act is a question of fact that cannot be determined at the pleadings stage.  *In re Sears Roebuck & Co. Securities Litigation,* 291 F.Supp.2d 722, 727 (N.D. Ill. 2003).  Moreover, averments of control are not averments of fraud for purposes of control person liability and they need not be pled with particularity.  *In re Parmalat Securities Litigation.*, 414 F. Supp. 2d 428 (S.D. N.Y. 2006).  Thus, Federal Rule of Civil Procedure 9(b) does not apply to Plaintiffs' allegations that Orecchio is a control person of J&R Ventures.  *Id.*

  Here, Plaintiffs have alleged that Orecchio held himself out as manager and one of only two members of J&R Ventures.  Therefore, under the default provisions of the applicable statute, as a manager of J&R Ventures Orecchio had a right to participate in the management of the company, and therefore had the power and ability to control the

---

the outstanding voting securities of the issuer of ach security where no other person owns or controls a greater percentage of such securities . . ."

transactions at issue. Moreover, even if Orecchio's representations as to his status with J&R Ventures were false,[2] he would nonetheless be liable as a control person because he exercised control over J&R Ventures. Notably, since Plaintiffs filed their Complaint, they learned that Orecchio was an authorized signatory on the J&R Ventures account at Wells Fargo bank—the very account into which Orecchio directed Plaintiffs to transmit their investment proceeds. Moreover, Orecchio endorsed some of Plaintiffs' checks to J&R Ventures, thereby exercising control over the operations of J&R Ventures. Plaintiffs further alleged that Orecchio misappropriated $1,000,000 of Plaintiffs' investment proceeds by issuing a check from the J&R Ventures account payable to AA Capital. As such, Orecchio exercised control over J&R Ventures as well as the transactions that gave rise to liability at issue in Plaintiffs' Complaint. Plaintiffs' allegations more than satisfy the notice pleading requirements of the Federal Rules of Civil Procedure as to Orecchio's status as a control person. *In re Parmalat Securities Litigation.,* 414 F. Supp. 2d 428 (S.D. N.Y. 2006) (allegations of control are not allegations of fraud and are therefore not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).).

 D. <u>Plaintiffs Have Sufficiently Plead Scienter.</u>

 Finally, Orecchio's arguments regarding the element of *scienter* are misplaced. First, *scienter* can be inferred from Plaintiffs' allegations that Orecchio was misappropriating the investment proceeds of some of the Plaintiffs while simultaneously soliciting additional investments in Supplement Partners based on representations that the

---

[2] To the extent that Orecchio attempts to argue that he was neither a member nor manager of J&R Ventures, his representations that he was a manager and one of only two members of J&R Ventures would be yet another material misrepresentation upon which Plaintiffs relied. Thus, Orecchio's cannot exculpate himself by attempting to argue that he was not a manager or member of J&R Ventures.

new investors' funds would be used to purchase shares of Xyience. Under those circumstances, *scienter* can easily be inferred from Plaintiffs' allegations.

Second, Orecchio's argument regarding Plaintiffs' purported failure to allege *scienter* is fundamentally flawed because *scienter* is not an element of a claim under the controlling person provisions of the Federal and State securities statutes or a claim for <u>primary</u> <u>liability</u> under the Illinois Securities Act. As to the controlling person provisions, "Section 20(a) [of the 1934 Act] has "neither a scienter requirement nor a heightened pleading requirement." *In re Sears Roebuck & Co. Securities Litigation,* 291 F.Supp.2d at 727. Similarly, the controlling person provisions of the Illinois and Delaware Securities statutes do not require a showing of *scienter.* As to Plaintiffs' claims under the Illinois Securities Act, subsections F and G of 815 ILCS 5/12 do not require a showing of *scienter,* even for primary violations of the Act (as opposed to liability under the controlling person provisions). *Wheaten v. Mathews Holmquist & Assoc., Inc.,* 1996 WL 494245 (N.D. Ill. 1996). Thus, Plaintiffs state claims against Defendant Orecchio under the controlling person provisions of Securities Exchange Act of 1934, as well as the Illinois and Delaware statutes without ever having to plead Orecchio's *scienter.* More important, even Plaintiffs' claims for primary violations of sub-sections F and G of the Illinois statute do not require a showing of *scienter*. *Wheaten,* 1996 WL 494245 (N.D. Ill. 1996). Therefore, Orecchio's arguments relating to the omission of a *scienter* allegation are wholly without merit.

**II. Plaintiffs' Claims for Breach of Fiduciary Duty and Conversion**

Defendant's only substantive challenge to Plaintiffs' claims for breach of fiduciary duty and conversion is that Plaintiffs have not complied with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). While Plaintiffs dispute the

9

application of Rule 9(b) to the above-referenced claims, for the reasons discussed above, Plaintiffs have sufficiently identified the fraudulent scheme, as well as Orecchio's misrepresentations with precision. Plaintiffs have even identified the transmission of funds that forms the basis for the conversion claim by date, amount, and financial institution. For the reasons set forth above, Defendant's argument that Plaintiffs have failed to comply with Federal Rule of Civil Procedure 9(b) is wholly without merit. Moreover, Defendant's procedural argument—that the court should relinquish jurisdiction over Plaintiffs' common law claims must similarly fail on the basis that Plaintiffs have sufficiently pled claims under the Federal securities statutes.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendant's Motion to Dismiss. In the event that the Court is inclined to grant any portion of Defendant's Motion, Plaintiffs request leave to amend their Complaint pursuant to Federal Rule of Civil Procedure 15(a), which "freely" permits amendments to cure defects.

Respectfully submitted,

/s/ Elizabeth Neugent Dixon  
One of Plaintiffs' Attorneys

James L. Kopecky  
Elizabeth Neugent Dixon  
James L. Kopecky P.C.  
190 S. LaSalle St., Ste. 850-A  
Chicago, IL 60603  
T: (312) 527-3966  
F: (312) 527-3968  
Jim@jlkopecky.com  
Elizabeth@jlkopecky.com

Daryl M. Schumacher
The Law Offices of Daryl M. Schumacher, P.C.
190 S. LaSalle St., Ste. 850-C
Chicago, IL 60603
T: (312)380-6585
F: (312) 324-0666
Daryl@schumacherlegal.com

1

**CERTIFICATE OF SERVICE**

    The undersigned attorney certifies that on August 8, 2008, she caused the foregoing document to be served upon the following counsel of record via the ECF system.

                      /s/ Elizabeth Neugent Dixon

1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM BEREZOWITZ, *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No.  08 CV 1756 |
| ) | |
| J&R VENTURES, LLC and JOHN ORECCHIO, ) | Hon. Joan Humphrey Lefkow |
| ) | Magistrate Judge Keys |
| Defendants. ) | |

## NOTICE OF FILING

TO:  All counsel of Record

PLEASE TAKE NOTICE that on August 8, 2008, the undersigned caused **Plaintiffs' Response In Opposition to Defendant's Motion to Dismiss** to be filed with the Clerk of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604.

Respectfully submitted,

s/ Elizabeth Neugent Dixon

James L. Kopecky
Elizabeth Neugent Dixon
James L. Kopecky P.C.
190 S. LaSalle St., Ste. 850-A
Chicago, IL 60603
T: (312) 527-3966
F: (312) 527-3968
Jim@jlkopecky.com
Elizabeth@jlkopecky.com
*Attorneys for the Plaintiffs*

Daryl M. Schumacher
The Law Offices of Daryl M. Schumacher, P.C.
190 S. LaSalle St., Ste. 850-C
Chicago, IL 60603
T: (312)380-6585
F: (312) 324-0666
Daryl@schumacherlegal.com
*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

I, Elizabeth Neugent Dixon, do hereby attest and state that on August 8, 2008, I caused copies of **Plaintiffs' Response In Opposition to Defendant's Motion to Dismiss** to be served on all counsel of record via the U.S. District Court for the Northern District of Illinois' ECF system.

                                                                            s/ Elizabeth Neugent Dixon_____

James L. Kopecky
Elizabeth Neugent Dixon
James L. Kopecky P.C.
190 S. LaSalle St., Ste. 850-A
Chicago, IL 60603
T: (312) 527-3966
F: (312) 527-3968
Jim@jlkopecky.com
Elizabeth@jlkopecky.com
*Attorneys for the Plaintiffs*

Daryl M. Schumacher
The Law Offices of Daryl M. Schumacher, P.C.
190 S. LaSalle St., Ste. 850-C
Chicago, IL 60603
T: (312)380-6585
F: (312) 324-0666
Daryl@schumacherlegal.com
*Attorney for the Plaintiffs*